

**FILED**
**Sep 06, 2019**
**08:40 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| **CORNELIUS POLK,** | ) | **Docket No. 2018-05-1146** |
| **Employee,** | ) | |
| **v.** | ) | |
| | ) | |
| **SUNDOWNER MGMT. GROUP,** | ) | **State File No. 56493-2017** |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **SECURITY NAT. INS. CO.,** | ) | **Judge Dale Tipps** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This case came before the Court on August 29, 2019, for an Expedited Hearing on whether Mr. Polk is entitled to Botox injections ordered by his authorized physician.[1] For the reasons below, the Court holds Mr. Polk failed to prove entitlement to the requested benefits at this time.

### History of Claim

Mr. Polk worked as a cook at one of Sundowner's restaurants. During a robbery on July 27, 2017, Mr. Polk suffered a head injury. He received authorized treatment with Dr. Elizabeth Null.

Dr. Null first saw Mr. Polk on September 27 for complaints of daily headaches, dizziness, and blurred vision. She diagnosed headache disorder, ordered physical therapy and a brain MRI, and prescribed Ketorolac and Klonopin. She also noted Mr. Polk was anxious and sleeping poorly, so she ordered a psychiatric evaluation and treatment.

---

[1] When Mr. Polk requested the Expedited Hearing, he also sought a sleep study recommended by his neurologist. However, Mr. Polk confirmed during the hearing that the Botox treatment was the only issue to be determined.

1

When Mr. Polk returned on November 7, his symptoms were largely unchanged. Dr. Null continued the previous prescriptions and recommended Botox injections for what she diagnosed as intractable chronic migraine.

The next medical record submitted is from June 2018. Dr. Null found that Mr. Polk was suffering from PTSD as well as his headaches. She stopped his earlier prescriptions and prescribed Topamax instead. Dr. Null also referred Mr. Polk to a sleep physician and reiterated her Botox recommendation.

Dr. Null's February 2019 record shows that Mr. Polk continued to complain of headaches. He reported his medications "didn't agree with him," so he did not refill them. Although he was receiving counseling, Mr. Polk felt that his PTSD was worse. He also told Dr. Null that Sundowner never approved his Botox injections.

At the hearing, Mr. Polk testified about problems getting medical treatment.[2] He noted that it took two months for him to get his first appointment with Dr. Null. He described great difficulty communicating with the carrier, which caused the seven-month delay between his November 2017 and June 2018 appointments. Further, even though Dr. Null recommended psychiatric treatment at his first visit, Sundowner did not provide a psychiatric panel until July 2018. He selected Dr. Barr but never got an appointment. Six months later, Mr. Polk received a second psychiatric panel in January 2019 and selected Dr. Kyser. He is now treating with Dr. Kyser and feels his treatment is going well.

Mr. Polk said he continues to suffer severe headaches almost daily that last four to six hours. He confirmed that Dr. Null had prescribed Ketorolac and Topamax but testified they never helped his headaches.

Regarding the Botox recommendations, Mr. Polk testified that he never received any written notice of denial or utilization review from Sundowner or its carrier.

Sundowner's proof consisted of two utilization review (UR) reports. The first of these, issued by Reliable Review Services (RRS), is dated December 19, 2017. The reviewing doctor explained that Botox injections "have been demonstrated to be effective for treatment of chronic migraine and no other type of headache." Noting that Mr. Polk "has post-traumatic headaches, but he has not been diagnosed with chronic migraine," the doctor concluded that Botox injections were not medically necessary under the ODG Treatment Guidelines.

The second UR document is a February 4, 2019 report from Mitchell International. This report also concluded that Botox injections were not medically necessary. The

---

[2] Mr. Polk's wife confirmed these problems during her testimony.

reviewing doctor noted that, for Botox injections, the ODG Guidelines require a patient to have "a diagnosis of migraine headache, more than 15 days per month with headaches lasting 4 hours a day or longer, and not responded to at least three prior first-line migraine headache prophylaxis medications." He concluded: "There is a lack of documentation to show the patient had more than 15 days per month with headaches lasting 4 hours a day or longer and was [sic] not responded to at least three prior first-line migraine headache prophylaxis medications."

Mr. Polk requested that the Court order Sundowner to provide the Botox injections. He also asked for attorney fees incurred because Sundowner failed to provide a wide range of treatment recommended by his authorized doctor.

Sundowner contended that it accepted Mr. Polk's claim and provided all benefits to which he is entitled. It argued he failed to prove he is likely to establish the medical necessity of the Botox injections and asked the Court to deny his request.

## Findings of Fact and Conclusions of Law

For the Court to grant Mr. Polk's request, he must provide sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2018); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). This requires the Court to examine whether he is likely to prove the medical necessity of the Botox injections.

### *Medical Necessity*

Any treatment recommended by a panel physician "shall be presumed to be medically necessary for the treatment of the injured employee." Tenn. Code Ann. § 50-6-204(H). Resolution of this issue requires the Court to determine whether Sundowner rebutted the applicable presumption of medical necessity attached to Dr. Null's recommendation.

The Appeals Board addressed this presumption in *Morgan v. Macy's*, 2016 TN Wrk. Comp. App. Bd. LEXIS 39 (Aug. 31, 2016). The Board noted section 204(a)(3)(I) provides that, "[f]ollowing the adoption of treatment guidelines . . . the presumption of medical necessity for treatment recommended by an authorized physician is rebuttable only by clear and convincing evidence demonstrating that the recommended treatment substantially deviates from, or presents an unreasonable interpretation of, the treatment guidelines." The Board also referred to the Bureau's medical treatment guidelines. *See* Tenn. Comp. R. & Regs. 0800-02-25-.03(2).

Based upon these provisions, the Board held in *Morgan* that, "a trial court can

3

apply one of two potential presumptions to the issue of medical necessity in any given case." *Id.* at *17. First, the presumption of medical necessity may be rebutted by a preponderance of the evidence when the treating physician does not explicitly follow the treatment guidelines. Second, a trial court should apply the presumption rebuttable by clear and convincing evidence only when an employee presents proof that the authorized physician "explicitly follows the treatment guidelines." *Id.* at *18.

Because Dr. Null is an authorized panel physician, the Court must presume the Botox injections are medically necessary. However, Mr. Polk presented no evidence that she explicitly followed the treatment guidelines. Thus, under *Morgan*, Sundowner need only rebut the medical necessity of the injections by a preponderance of the evidence.

The RRS report is flawed because the reviewer based his conclusion on the fact that Mr. Polk had not been diagnosed with chronic migraines. A review of Dr. Null's records shows that this is incorrect. Those records show she actually diagnosed Mr. Polk with intractable chronic migraine on November 7, 2017, over a month before RRS issued its report.

The Mitchell International reviewer based his non-certification on a different part of the ODG: "a diagnosis of migraine headache, more than 15 days per month with headaches lasting 4 hours a day or longer, and not responded to at least three prior first-line migraine headache prophylaxis medications." Mr. Polk's testimony and Dr. Null's medical records confirm that he has a migraine diagnosis and headaches of the requisite number and duration. The second half of the guideline is more problematic.

Dr. Null's records only show two prescriptions for Mr. Polk's migraines – Ketorolac and Topamax. Further, it appears from the Mitchell report that only Topamax is included in the list of "first-line" medications identified in the ODG Treatment Index. The Court concludes that the recommended treatment substantially deviates from the treatment guidelines' requirement of three prior first-line medications. Absent any information from Dr. Null regarding this deviation, the Court finds this is sufficient to rebut the presumption of necessity. Therefore, the Court cannot find at this time that Mr. Polk is likely to prevail on this issue at a hearing on the merits.

*Utilization Review*

The Court notes that Mr. Polk presented some compelling arguments about Sundowner's use of UR. He did not object to the UR reports' admissibility, noting correctly that they are admissible medical records because the reviewing physicians signed them. See Tenn. Comp. R. & Regs. 0800-20-21-.16(2)(b). Instead, Mr. Polk contended that Sundowner's UR process was improper.

The Workers' Compensation Law gives an employer the right to submit any

medical treatment recommended by the authorized treating physician to UR for "evaluation of the necessity, appropriateness, efficiency and quality of medical care services[.]" Tenn. Code Ann. § 50-6-102(20). In the case of all denials, the UR decision "shall be determined by an advisory medical practitioner and communicated to the parties in a written utilization review report." Tenn. Comp. R. & Regs. 0800-02-06-.03(3).

The rules require an employer to submit any UR request to its provider within three business days of the authorized physician's notification of the recommended treatment. The employer is also required to notify all parties when it submits a case to its UR provider. *Id.* at .06(1). Further, the UR decision must be sent to the employee and the authorized treating physician within seven business days. *Id.* at .06(2). Mr. Polk testified that he did not know his case had been referred to UR, and nothing in Dr. Null's records suggests she received notice, either. Sundowner presented no evidence to the contrary. It also failed to rebut Mr. Polk's testimony that he never received either UR report. It appears to the Court that Sundowner's violation of these UR rules deprived Mr. Polk and his authorized physician of the opportunity to address the ODG issues and might have significantly delayed the course of his treatment.

The Court also finds troubling Sundowner's failure to comply with the three-day submission requirement. The first referral to UR occurred at least a month after Dr. Null's first Botox recommendation. Sundowner did not make the second referral until January 31, 2019, over six months after Mr. Polks most recent appointment with Dr. Null. This suggests that Sundowner made the decision to ignore Dr. Null's recommendations and only later sought medical opinions supporting that decision.

Based on the foregoing, the undersigned Workers' Compensation Judge refers Sundowner and its UR providers to the penalty unit for investigation and assessment of a civil penalty. Upon its issuance, the Clerk shall send a copy of this Order to the Penalty Unit. *See* Tenn. Comp. R. & Regs. 0800-02-24-.03.

*Attorney Fees*

Mr. Polk seeks attorney fees under Tennessee Code Annotated section 50-6-226(d)(1)(B). This section allows an award of fees and reasonable costs incurred when an employer:

> Wrongfully denies a claim or wrongfully fails to timely initiate any of the benefits to which the employee or dependent is entitled under this chapter, including medical benefits . . . if the workers' compensation judge makes a finding that such benefits were owed at an expedited hearing or compensation hearing.

The Court agrees with Mr. Polk that Sundowner likely failed to timely initiate his

5

recommended psychiatric treatment, Botox injections, and sleep study. Further, as noted above, this failure to provide Mr. Polk the treatment recommended by his authorized treating physician appears to have been based solely on Sundowner's own interpretation of the medical records instead of an expert medical opinion. This behavior is likely to meet the requirement of a "wrongful" failure to timely initiate medical benefits. *See Thompson v. Comcast Corp.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *22-32 (Jan. 30, 2018).

However, the Appeals Board has repeatedly held that section 226(d)(1)(B) does not require determination of fee requests following an Expedited Hearing. Citing the uncertainties inherent in litigation, the standard of proof, and other concerns, the Board concluded, "a decision to award attorneys' fees and expenses at an interlocutory stage of a case should be made only in extremely limited circumstances." *See Andrews v. Yates Servs., LLC*, 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at *7-8 (May 23, 2017).

Mr. Polk suggested attorney fees are necessary to avoid "letting adjusters get away with" unsupported refusal of treatment. However, Mr. Polk failed to articulate exactly how an award of attorney fees at this stage of the claim is necessary to accomplish that goal. Further, at least so far as the Botox injections are concerned, some question remains as to the ultimate medical necessity of some of the denied treatment. In view of the possibility that this question might be resolved with further treatment or explanation from Dr. Null, as well as the fact that the other medical recommendations or referrals were not identified as disputed issues for this hearing, the Court denies Mr. Polk's request for fees at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Polk's claims against Sundowner and its workers' compensation carrier for the requested Botox injections and attorney fees are denied at this time.

2. This matter is set for a Scheduling Hearing on November 12, 2019, at 9:00 a.m. You must call toll-free at 855-874-0473 to participate. Failure to call might result in a determination of the issues without your further participation. All conferences are set using Central Time.

**ENTERED September 6, 2019.**

_____

**Judge Dale Tipps**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. Affidavit of Cornelius Polk
2. Records from Dr. Elizabeth Null
3. RRS medical review report
4. Mitchell International medical review report
5. July 11, 2019 C-42 Choice of Physician Form
6. Affidavit of Jill Draughon
7. January 28, 2019 C-42 Choice of Physician Form

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Hearing Brief
5. Employee's Pre-Hearing Brief

# CERTIFICATE OF SERVICE

I certify that a copy of the Expedited Hearing Order was sent as indicated on September 6, 2019.

| Name | Certified Mail | Email | Service sent to: |
|------|---------------|-------|------------------|
| Jill Draughon, Esq. Employee Attorney | | X | Jdraughon@hughesandcoleman.com |
| Troy Hart, Esq. Employer Attorney | | X | wth@mijs.com |
| Compliance Program | | X | WCCompliance.Program@tn.gov |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

7



<u>Expedited Hearing Order Right to Appeal:</u>

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# EXPEDITED HEARING NOTICE OF APPEAL

Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

**Employer** _____

### Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals

Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

### Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

### Additional Information

**Type of Case** [Check the most appropriate item]

- ☐ Temporary disability benefits
- ☐ Medical benefits for current injury
- ☐ Medical benefits under prior order issued by the Court

### List of Parties

**Appellant (Requesting Party):**_____At Hearing: ☐Employer ☐Employee

Address:_____

Party's Phone:_____ Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)
**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules
of Board of Workers' Compensation Appeals on this the _____ day of _____, 20 ___

[Signature of appellant or attorney for appellant]  _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

    _____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                   RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month   Medical/Dental  $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $ _____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

Automobile            $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                $ _____        (FMV) _____

Other                $ _____        Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                    RDA 11082